UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VINCENT TURNER, o/b/o Deborah Ann
Turner (deceased),

    Plaintiff,

v.                                                 Case No:   2:18-cv-53-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is the Complaint, filed on January 23, 2018. (Doc. 1). Plaintiff Vincent Turner, on behalf of Deborah Ann Turner, deceased, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Deborah Ann Turner's ("Claimant") claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum detailing their respective positions. For the reasons set forth herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-.1511, 416.905-.911.

### B. Procedural History

On July 6, 2011, Claimant filed an application for disability insurance benefits. (Tr. at 130, 268-71). Claimant alleged an onset date of August 1, 2005. (*Id.* at 268). Claimant's application was denied initially on September 2, 2011, and on reconsideration on December 5, 2011. (*Id.* at 130, 138). A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on April 30, 2014, in Fort Myers, Florida. (*Id.* at 63-111). The ALJ issued an unfavorable decision on September 5, 2014, finding Claimant not to be under a disability from August 7, 2007 through June 30, 2010.[1] (*Id.* at 150). On February 19, 2016, the Appeals Council vacated the ALJ decision and remanded the case because the ALJ had failed to consider Claimant's prior recusal request. (*Id.* at 159). The Appeals Council directed the ALJ to "consider the claimant's request for recusal and offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision." (*Id.* at 160).

A second hearing was held on October 3, 2016, in Fort Myers, Florida before ALJ William G. Reamon. (*Id.* at 28-62). The ALJ issued an unfavorable decision on February 8,

---

[1] The September 2014 ALJ decision reflects that while Claimant originally alleged disability beginning August 1, 2005, "[a]t the hearing, the claimant amended her alleged onset date to August 7, 2007 due to a prior determination dated August 6, 2007." (*Id.* at 142). However, the subsequent ALJ decision on appeal before this Court contains the original alleged disability onset date of August 1, 2005, rather than August 7, 2007. (*Id.* at 10). The parties have not addressed this discrepancy, and the Court therefore relies on the most recent ALJ decision.

2

2017, finding Claimant not under a disability from August 1, 2005 through June 30, 2010, the date last insured. (*Id.* at 10-20). On November 24, 2017, the Appeals Council denied Claimant's request for review. (*Id.* at 1-6). Plaintiff filed a Complaint, on behalf of Claimant, in the United States District Court on January 23, 2018. (Doc. 1). This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

C. **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four, and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Claimant last met the insured status requirements of the Social Security Act on June 30, 2010. (Tr. at 13). At step one of the sequential evaluation, the ALJ found that Claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2005 through her date last insured, June 30, 2010. (*Id.*). At step

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

two, the ALJ determined that Claimant suffered from the following severe impairments: "Affective/Mood disorder." (*Id.* (citing 20 C.F.R. 404.1520(c))). At step three, the ALJ determined that through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* (citing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526)). At step four, the ALJ found that through the date last insured, Claimant had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to the performance of unskilled work not above the SVP 2 level." (*Id.* at 14).[3] The ALJ found that through the date last insured, Claimant was unable to perform any past relevant work as a secretary, general office clerk, data entry clerk, and customer service representative. (*Id.* at 19). The ALJ considered Claimant's age, education, work experience, and RFC and found that there were jobs that existed in significant numbers in the national economy that Claimant could have performed. (*Id.*). The ALJ noted that the vocational expert identified the following representative occupations that an individual with Claimant's age, education, work experience, and RFC would have been able to perform: (1) kitchen helper, DOT # 318.687-010, medium exertional level, and SVP 2; (2) sandwich maker, DOT # 317.664-010, medium exertional level, and SVP 2; and (3) janitor,

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). A Specific Vocational Preparation ("SVP") of 2 means "[a]nything beyond short demonstration up to and including 1 month." *Dictionary of Occupational Titles* (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* Unskilled work corresponds to an SVP of 1 and 2. SSR 00-4p. Further, unskilled work requires "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.

medium exertional level, and SVP 2.[4]  (*Id.* at 20).  The ALJ concluded that Claimant was not under a disability from August 1, 2005, the alleged onset date, through June 30, 2010, the date last insured.  (*Id.*).

> **D.  Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

---

[4]  "DOT" refers to the *Dictionary of Occupational Titles*.

## II. Analysis

On appeal, Plaintiff raises three issues. As stated by the parties, they are:

(1) Whether substantial evidence supports the ALJ's RFC.

(2) Whether the ALJ adequately weighed the opinions of Claimant's treating psychologist Dr. Robert Pollack.

(3) Whether the ALJ substituted his own opinion for medical experts' opinions.

(Doc. 22 at 16, 25, 32).

### A. Whether Substantial Evidence Supports the ALJ's RFC

Plaintiff argues that the ALJ improperly failed to find an RFC in terms of Claimant's ability to carry out certain work-related activities, instead finding that "the sole limitation in the RFC was the limitation 'to the performance of unskilled work not above the SVP 2 level.'" (Doc. 22 at 16 (quoting Tr. at 14)). Plaintiff contends that this is problematic because SVP levels "simply reflect how long it takes to perform a particular job," not the ability to carry out certain mental functions such as "understanding, remembering, and carrying out instructions, and . . . responding appropriately to supervision, co-workers, and work pressures in a work setting." (*Id.* at 17 (quoting 20 C.F.R. § 404.1545)). An RFC, Plaintiff contends, is meant to assess a claimant's limitations with regard to those mental functions, "not simply how long it takes to learn a job." (*Id.*). Thus, Plaintiff argues that because the ALJ failed "to express the RFC in terms of ability to perform mental activities," the ALJ's decision is unsupported by substantial evidence. (*Id.*).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). "An individual's RFC is his ability to do physical and mental

6

work activities on a sustained basis despite limitations secondary to his established impairments." *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).

When considering a claimant with a mental impairment, "[a]gency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form ("PRTF")] for evaluating mental impairments." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1520a(a)). This requires separate evaluations on a four-point scale of how Plaintiff's mental impairments impact four functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace, and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). Thus, where a claimant has "a colorable claim of mental impairment," the ALJ must "complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore*, 405 F.3d at 1214.

Plaintiff acknowledges that the ALJ conducted the necessary psychiatric review technique ("PRT") but contends that despite the ALJ's finding that Plaintiff had moderate limitations in understanding, remembering, and applying information, the ALJ failed to reflect those limitations in the RFC and instead "simply specified the purported ability to perform jobs than can be learned in a month or less." (Doc. 22 at 18, 20).

The Commissioner responds that unskilled work corresponds to an SVP of 1-2, (*id.* (citing SSR 00-4p)), and that to the extent Plaintiff alleges "the ALJ erred in not delineating the demands of unskilled work, the ALJ was not required to cite the regulations or rulings or otherwise recite the demands of unskilled work," (*id.* at 22 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987))). Furthermore, the Commissioner contends

that the RFC properly accounted for the ALJ's PRT finding that Claimant had moderate limitations in understanding, remembering, and applying information. (*Id.*). The PRT ratings, the Commissioner argues, are used to rate the severity of mental impairments and are not an assessment of a claimant's RFC. (*Id.*). Thus, the Commissioner contends that the ALJ properly relied on the PRT to find that Claimant had a severe mental impairment but did not have an impairment that met or equaled a listing. (*Id.*). The Commissioner argues that the ALJ's finding that Claimant was limited to unskilled work not above the SVP 2 level "sufficiently reflected the moderate limitations in understanding, remembering, and applying information and the record, as discussed by the ALJ." (*Id.* at 25).

SSR 96-8p states, in relevant part:

> 4. The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities *on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of . . . 20 CFR 416.945 . . . .*
>
> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C* of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.
>
> Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses an individual's abilities to perform . . . and mental

> [activities] (e.g., understanding and remembering instructions and responding appropriately to supervision). . . .
>
> As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions. . . . Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

(Emphasis added).

Thus, while the Commissioner is correct that the PRTF limitations are not the RFC, they must still be considered in conducting a "more detailed assessment" of the four criteria listed in the PRT when formulating a claimant's RFC. SSR 96-8p; 20 C.F.R. § 404.1520a(c)(3); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2001) (rejecting similar argument and holding that while "the PRT and RFC evaluations are undeniably distinct, nothing precludes the ALJ from considering the results of the former in his determination of the latter" (citations omitted)).

The Court notes that 20 C.F.R. § 404.1520a(c)(3), establishing the four functional areas an ALJ is required to assess, was revised in January 2017.[5] While cases examining moderate limitations in the new functional area of understanding, remembering, and applying information are scant, the Court finds persuasive the reasoning applied in cases examining similar issues under the former version of the regulation. For example, in *Millhouse v. Astrue*, No. 8:08-cv-378-T-TGW, 2009 WL 763740, at *3 (M.D. Fla. Mar. 23, 2009), the ALJ found that the plaintiff had moderate limitations in concentration, persistence, or pace and in social functioning and

---

[5] The revision became effective January 17, 2017. The four areas of functioning were previously: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

9

concluded that the limitations only limited the claimant to unskilled work. The Court reversed and remanded, reasoning that "[s]imply finding that the plaintiff had a mental limitation of unskilled work clearly does [not] [sic] constitute 'a more detailed assessment by itemizing various functions contained in the broad categories' of social functioning and concentration, persistence, or pace." *Id.*

Similarly, in *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1300 (M.D. Fla. 2011), the ALJ found the plaintiff had moderate limitations in concentration, persistence, or pace and concluded those limitations only limited him to the performance of unskilled work. In reversing and remanding, the Court found that "the only reference to Plaintiff's mental impairment contained in the RFC was: '[n]on-exertionally, the claimant is limited to the performance of unskilled work.'" *Id.* at 1302. In concluding that the ALJ erred, the Court relied on the reasoning in *Millhouse*. *Id.* More specifically, the Court wrote: "Following the reasoning in *Millhouse*, the RFC does not appear to adequately reflect Plaintiff's mental impairment and certainly does not reflect 'a more detailed analysis' with specific findings as to the impact of Plaintiff's moderate concentration, persistence, and pace limitations on his ability to perform work." *Id.* Moreover, the Court found that the ALJ's narrative discussion explaining his findings did not "provide[] a 'function-by-function' assessment or express[] Plaintiff's nonexertional capacity in terms of work-related functions." *Id.* Nor did it "address the impact of Plaintiff's moderate limitations in concentration, persistence, or pace on his ability to 'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a work setting." *Id.* (quoting SSR 96-8p); *see also Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1317 (M.D. Fla. 2012) (reversing and remanding in case where the ALJ found claimant had moderate limitations in

social functioning and concentration, persistence, or pace and found claimant had the RFC "to perform a full range of work at all exertional levels, but was restricted to unskilled work and occasional contact with the public" but failed to "make a highly individualized inquiry that complies with the 'function by function assessment' addressing the plaintiff's work related mental activities set forth in SSR 96-8p").

Here, as noted above, the ALJ found that Claimant had moderate limitations in understanding, remembering, and applying information and that she had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to the performance of unskilled work not above the SVP 2 level." (Tr. 13, 14). Following the reasoning in *Millhouse*, *Brunson*, and *Olsen*, the Court concludes that the RFC does not reflect "a more detailed assessment" with specific findings regarding the impact of Claimant's moderate limitations in her ability to understand, remember, and apply information on her ability to perform work. SSR 96-8p. Although the RFC does also include a limitation to "unskilled work *not above the SVP 2 level*," the Court concludes that this does not rectify the issue. (Tr. at 14 (emphasis added)). In fact, unskilled work corresponds to an SVP of 1 and 2, SSR 00-4p, and limiting Claimant to unskilled work "not above the SVP 2 level" is therefore redundant. Nor does the ALJ's RFC narrative explanation contain the necessary function-by-function assessment or examine Claimant's nonexertional capacity in terms of work-related functions. *Id.*; *see also, e.g.*, *Brunson*, 850 F. Supp. 2d at 1302-03.

The analysis does not end here, however. When an ALJ relies on VE testimony, "'the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE' rather than the RFC simply cited in the ALJ's decision." *Brunson*, 850 F. Supp. 2d at 1303 (quoting *Corbitt v. Astrue*, No. 3:07-cv-518-J-HTS, 2002 WL 1776574, at *3 (M.D. Fla.

Apr. 17, 2008) (finding no error in case in which ALJ failed to include plaintiff's moderate limitations in maintaining concentration, persistence, and pace in RFC but did specifically include the limitations in the hypothetical posed to the VE)).

With this in mind, the Court looks to the hypothetical posed by the ALJ to the VE. At the hearing, the ALJ asked the VE, in relevant part:

> Q: . . . And if the Claimant were limited to work that involved the understanding, remembering, and carrying out of SVP-2 level instructions or below, would that eliminate all pat [sic] work?
>
> A: Yes. It would, Your Honor.
>
> Q: If that was the limitation, because I just stated it, would there be work in the national economy that would fit that description?
>
> . . . .
>
> A: Okay. Yes. There would then, Your Honor.
>
> Q: What jobs would there be that would fall within the range of SVP-2 level work or below, at any exertional level?
>
> A: Well, the position of kitchen helper would be one, a sandwich maker, a janitor, those types of positions.

(Tr. at 54-55).

This hypothetical offers no clarification because similar to the RFC, the ALJ framed the hypothetical in the context of "SVP-2 level instructions or below." It is not clear, however, whether a job with an SVP-2 level accounts for moderate limitations in understanding, remembering, and applying information. The Court finds persuasive Plaintiff's argument that "SVP levels do not reflect abilities to carry out certain mental functions. Rather, they simply reflect how long it takes to learn to perform a particular job." (Doc. 22 at 17). Because the hypothetical did not properly account for Claimant's moderate limitations, the Court finds that the ALJ's decision is not supported by substantial evidence and remand is, therefore, required.

*See, e.g.*, *Olsen*, 858 F. Supp. 2d at 1320 (finding that such an error was not harmless); *Brunson*, 850 F. Supp. 2d at 1304.

### B. Plaintiff's Remaining Arguments

Plaintiff's remaining issues focus on whether the ALJ properly weighed the medical experts' opinions. The Court declines to address the remaining issues at this time in light of the remand on Plaintiff's first issue. Upon remand, however, the ALJ must re-assess the RFC based upon all relevant evidence and must therefore necessarily re-assess all the relevant evidence. The Court emphasizes here that it is not finding at this time that the medical experts' opinions must be given greater weight. After reevaluation, the ALJ may reach the same conclusions. Nevertheless, for the reasons explained above, the Court cannot affirm the ALJ's decision on the existing record.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reevaluate Claimant's residual functional capacity.

2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124 Orl-22.

3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on February 19, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties